Shirley BAILEY *v.* Emile MAXWELL
and Christine Maxwell

CA 05-700                                          230 S.W.3d 282

Court of Appeals of Arkansas
Opinion delivered March 1, 2006

*Hubert W. Alexander*, for appellant.

*Mark S. Carter, P.A.*, by: *Mark S. Carter*, for appellees.

TERRY CRABTREE, Judge.   Appellant Shirley Bailey appeals the trial court's decision denying her petition for guardianship but granting the guardianship petition of appellees Christine and Emile "Pete" Maxwell. For reversal of that decision, appellant argues that the trial court erred in finding that she was neither qualified nor suitable to serve as a guardian and in ruling that it was thus not necessary to consider the best interests of the child. We affirm.

Though they never married, Melinda Maxwell and Mark Bailey were the parents of two children, a son D.B. and a daughter B.J.B. Melinda was killed in an automobile accident in August 1999 when D.B. was five years old and B.J.B. was nine months old. At the time of Melinda's death, D.B. had been living with the appellees, while B.J.B. had resided with Melinda and Mark. In January 2000, Mark and B.J.B. moved into the home of appellant and Bill Bailey, Mark's parents.

Litigation ensued between Mark and appellees over the custody of the children. By an order entered in January 2001, Mark was granted custody of B.J.B., while appellees were awarded custody of D.B. No appeal was taken from that order.

Tragedy struck again in January 2004 when Mark died in an automobile accident. After Mark's death, appellant and Bill Bailey promptly filed a petition for guardianship over B.J.B., and an order of guardianship was entered without a hearing. Appellees objected to the order of guardianship on several procedural grounds, and they filed a counterpetition seeking guardianship of both children, as well as a petition for a change of custody of B.J.B. All issues were joined in a hearing held on November 17, 2004.

There is no need to set out in detail the testimony presented at the hearing. Suffice to say, despite the loss of their parents, the children are fortunate to have two sets of grandparents who care a great deal about them. The record shows that D.B. had always lived with the appellees, that B.J.B. had lived with appellant and Bill Bailey most of her young life, and that appellant was the only mother B.J.B. had ever known. The testimony revealed that both children were happy and well cared for in their respective homes. Appellant explained that guardianship over D.B. had not been sought because she did not feel that it was right to take him from the appellees and the only home he had ever known. Appellees felt just as strongly that it was desirable for the siblings to grow up together under one roof.

At the request of their ad litem, the children testified at the hearing. B.J.B., then age five, said that she loved the appellees and her brother but that she wished to stay with appellant and Bill Bailey, her "nanny" and "poppy." D.B., who was ten years old, also wanted to remain in his home with the appellees, his "grandma" and "grandpa," and he wanted his sister to come live with them.

The testimony also revealed that there was longstanding friction between the families. Appellees testified that they had little difficulty with appellant, but they placed blame on Bill Bailey as being the source of the tension. It was said that Bill Bailey spoke unkindly about them and their family in the presence of D.B. and that he was abrupt and rude to them on the telephone.

There was further testimony that appellees' forty-one-year-old daughter, Shirley, lived with them and that she was currently facing methamphetamine-related drug charges. There was also testimony that Shirley had been severely burned in an accident and that her stay with appellees was only temporary.

The testimony that the trial court deemed pivotal to its decision came from appellant. In her direct testimony, she stated that she and Bill Bailey were married and that they had been married for fifty years. On cross-examination, it was exposed that she and Bill Bailey had been divorced since 1980. Appellant said that they had continued to live together despite the divorce, that it was "like it never happened," and that "we don't ever think about it." As a result of this revelation, Bill Bailey withdrew his request for guardianship, leaving appellant as the sole petitioner for guardianship of B.J.B.[1]

The trial court issued its decision in a lengthy order entered on January 25, 2005. The trial court found that appellant had failed to establish that she was qualified to serve as guardian because she had presented no testimony that she was not a convicted and unpardoned felon. The trial court further found that appellant was not suitable to be the child's guardian because she had twice committed perjury, once in her verified petition for guardianship wherein she stated that she and Bill Bailey were husband and wife, and then again in her testimony before the court when she stated

---

[1] Arkansas Code Annotated section 28-65-214(b) (Repl. 2004) provides that more than one person cannot be appointed as guardian of the person unless they are husband and wife.

that she was married to Bill Bailey. In finding that appellant's misrepresentation rendered her unsuitable, the trial court reasoned that "[i]t is imperative to the judicial system and the administration of justice that courts require witnesses to testify truthfully and to hold accountable those witnesses who do not." The trial court did acknowledge that the primary consideration was the child's best interest, but it ruled that "best interest does not override procedure, nor does it obviate statutory requirements." The court thus granted the appellees' petition for guardianship finding that they had presented satisfactory evidence that they were both qualified and suitable to serve. Appellant was granted visitation with both children on alternate weekends, half the summer break from school, half the Christmas break from school, and spring break during odd-numbered years.

Appellant argues that the trial court erred in finding that she was not qualified or suitable to be the child's guardian. We review such proceedings do novo, but we will not reverse the decision of the trial court unless it is clearly erroneous. *Moore v. Sipes,* 85 Ark. App. 15, 146 S.W.3d 903 (2004). When reviewing the proceedings, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *Id.*

Pursuant to Ark. Code Ann. § 28-65-210 (Repl. 2004), three things must be proved before a guardian may be appointed: (1) the person for whom the guardianship is sought is a minor or otherwise incapacitated; (2) a guardianship is desirable to protect the needs of that person; and (3) the person to be appointed guardian is qualified and suitable to act as such. *Blunt v. Cartwright,* 342 Ark. 662, 30 S.W.3d 737 (2000). Arkansas Code Annotated section 28-65-203(a) (Repl. 2004) sets out the qualifications the petitioner must possess in order to be a guardian, providing that "a natural person who is a resident of this state, eighteen years or older, of sound mind, not a convicted and unpardoned felon is qualified to be appointed as guardian of the person and estate of an incapacitated person." This statute further provides that "no person whom the court finds to be unsuitable to perform the duties incident to the appointment shall be appointed guardian of the person or estate of an incapacitated person." Ark. Code Ann. § 28-65-203(f).

The probate code contains no definition of "unsuitable"; however, the supreme court has adopted the following definition:

> The statutory word "unsuitable" gives wide discretion to a probate judge. . . . Such a finding may also be based upon the existence of

an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly, and dispassionately in his trust.

*In re Guardianship of Vesa,* 319 Ark. 574, 581, 892 S.W.2d 491, 495 (1995); *see also Robinson v. Winston,* 64 Ark. App. 170, 984 S.W.2d 38 (1998); *Guess v. Going,* 62 Ark. App. 19, 966 S.W.2d 930 (1998). Our courts have also equated suitability with fitness. *See Blunt v. Cartwright, supra; Marsh v. Hoff,* 15 Ark. App. 272, 692 S.W.2d 270 (1985).

■ ■ The trial court found in the instant case that appellant had not shown that she was qualified to serve as guardian because she offered no testimony stating that she was not a convicted and unpardoned felon. By statute, our law provides that a person must be qualified to serve as a guardian, and one of the qualifications is that a person may not be a convicted and unpardoned felon. Ark. Code Ann. §§ 28-65-210(3) & 28-65-203(a). The record in this case is barren of evidence that appellant meets this qualification. Therefore, we are unable to say that the trial court's finding is clearly erroneous. Also, our statutory law requires a person to be suitable in order to be appointed as a guardian. Ark. Code Ann. §§ 28-65-210(3) & 28-65-203(f). Appellant was not truthful when she represented to the court that she and Bill Bailey were still husband and wife. That she perjured herself on such a fundamental matter was sufficient reason for the trial court to doubt whether appellant would act honorably in discharging her trust. We simply cannot say that the trial court's finding is clearly erroneous.

■ As her final point, appellant contends that the trial court erred by not considering the best interest of the child. We cannot agree. Appellant failed to establish that she was either qualified or suitable to act as the child's guardian. As a consequence, appellant could not become the child's guardian; thus it was not necessary for the court to decide whether it was in the child's best interest for appellant to be appointed as guardian.

Affirmed.

GLADWIN and ROBBINS, JJ., agree.