**AFFIRM; and Opinion Filed May 23, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00255-CV

**CONSUMER SERVICE ALLIANCE OF TEXAS, INC., TITLEMAX OF TEXAS, INC., AND ACE CASH EXPRESS, INC., Appellants**

**V.**

**CITY OF DALLAS, TEXAS, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-08739-A**

## OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice Fillmore

Consumer Service Alliance of Texas, Inc. (CSAT), TitleMax of Texas, Inc. (TitleMax),

and Ace Cash Express, Inc. (Ace) (collectively appellants) appeal the trial court's order granting

the City of Dallas, Texas's (the City) plea to the jurisdiction.  We affirm the trial court's order.

### Background

Chapter 393 of the finance code regulates credit services organizations (CSOs).[1]  *See*

TEX. FIN. CODE ANN. §§ 393.001–.628 (West 2006 & Supp. 2013) (the Act).  During the 2011

---

[1] A CSO is:

> [A] person who provides, or represents that the person can or will provide, for the payment of valuable consideration any
> of the following services with respect to the extension of consumer credit by others:
> (A) improving a consumer's credit history or rating;
> (B) obtaining an extension of consumer credit for a consumer; or
> (C) providing advice or assistance to a consumer with regard to Paragraph (A) or (B).

TEX. FIN. CODE ANN. § 393.001(3) (West 2006).

Legislative Session, the Texas Legislature amended the Act, as relevant here, to provide for the licensing and regulation of credit access businesses (CABs), a type of CSO.[2] *See id.* §§ 393.201(c), .221–.224, .601–.628 (West Supp. 2013). The statutory amendments were effective January 1, 2012. *See* Act of May 23, 2011, 82d Leg., ch. 1301, § 3, 2011 Tex. Gen. Laws 3717, 3718; Act of May 23, 2011, 82d Leg., ch. 1302, § 10, 2011 Tex. Gen. Laws 3719, 3726.

On June 22, 2011, the Dallas City Council adopted Ordinance No. 28287 (the Ordinance) regulating CABs with physical locations within the City. The Ordinance was codified in chapter 50, article XI of the Revised Code of Civil and Criminal Ordinances of the City of Dallas, Texas. *See* Dallas, Tex., Code §§ 50-144–50-151. Like the amendments to the Act, the Ordinance became effective on January 1, 2012. *Id.* § 50-144. TitleMax and Ace are CABs with physical locations in the City and are members of CSAT, a trade association comprised of CABs.

On July 15, 2011, CSAT filed this lawsuit requesting a declaration that the Ordinance was preempted, in whole or in part, by the Act, and injunctive relief to prevent enforcement of the Ordinance. The City filed a plea to the jurisdiction and special exceptions to CSAT's pleading. In response, CSAT filed an amended petition, and TitleMax and Ace intervened in the lawsuit.

The City filed a second plea to the jurisdiction and special exceptions to CSAT's amended petition and TitleMax and Ace's plea in intervention. After the trial court granted some of the City's special exceptions, CSAT, TitleMax, and Ace filed a combined pleading consisting of CSAT's second amended petition and TitleMax and Ace's amended petition in intervention. The City filed special exceptions to the combined pleading asserting appellants had failed to

---

[2] A CAB is a CSO that "obtains for a consumer or assists a consumer in obtaining an extension of consumer credit in the form of a deferred presentment transaction or a motor vehicle title loan." TEX. FIN. CODE ANN. § 393.601(2) (West Supp. 2013).

plead a waiver of governmental immunity from suit or facts demonstrating a valid cause of action exists that falls within a constitutional or legislative waiver of governmental immunity from suit. Appellants agreed to amend their pleading and filed a second combined pleading consisting of CSAT's third amended petition and TitleMax and Ace's second amended petition in intervention.

In the second combined pleading, appellants alleged the Act "regulates the field of business in which CAB's [sic] operate in Texas," and the Ordinance conflicted with the Act by placing restrictions on consumer credit that CABs could obtain for consumers, or assist consumers in obtaining, that were not contained in the Act. Appellants specifically complained about the restrictions in section 50-151.3 of the Ordinance.[3] Appellants sought a declaration that the Ordinance was preempted and unenforceable because it conflicts with the Act. Alternatively, appellants sought a declaration that the credit restrictions in the Ordinance were preempted and unenforceable because the restrictions conflict with section 393.602(b) of the finance code by prohibiting CSAT's members from acting in a way expressly authorized by the Act.[4] TitleMax

---

[3] Section 50-151.3 provides:

> (a) The cash advanced under an extension of consumer credit that a credit access business obtains for a consumer or assists a consumer in obtaining in the form of a deferred presentment transaction may not exceed 20 percent of the consumer's gross monthly income.
> (b) The cash advanced under an extension of consumer credit that a credit access business obtains for a consumer or assists a consumer in obtaining in the form of a motor vehicle title loan may not exceed the lesser of:
> > (1) three percent of the consumer's gross annual income; or
> > (2) 70 percent of the retail value of the motor vehicle.
> (c) A credit access business shall use a paycheck or other documentation establishing income to determine a consumer's income.
> (d) An extension of consumer credit that a credit access business obtains for a consumer or assists a consumer in obtaining and that provides for repayment in installments may not be payable in more than four installments. Proceeds from each installment must be used to repay at least 25 percent of the principal amount of the extension of consumer credit. An extension of consumer credit that provides for repayment in installments may not be refinanced or renewed.
> (e) An extension of consumer credit that a credit access business obtains for a consumer or assists a consumer in obtaining and that provides for a single lump sum repayment may not be refinanced or renewed more than three times. Proceeds from each refinancing or renewal must be used to repay at least 25 percent of the principal amount of the original extension of consumer credit.
> (f) For purposes of this section, an extension of consumer credit that is made to a consumer within seven days after a previous extension of consumer credit has been paid by the consumer will constitute a refinancing or renewal.

Dallas, Tex., Code § 50-151.3.

[4] Section 393.602 of the finance code provides:

> (a) This subchapter applies only to a credit services organization that obtains for a consumer or assists a consumer in obtaining an extension of consumer credit in the form of:

sought a declaration that the Ordinance and the credit restrictions in the Ordinance are preempted and unenforceable because "they amount to a virtual prohibition against TitleMax's business operations in the city of Dallas." Appellants also sought injunctive relief to prevent the City from enforcing the Ordinance. Appellants alleged the City's immunity from suit was waived because they sought a declaration that the Ordinance was invalid.

The City filed a plea to the jurisdiction to the second combined pleading. The City asserted appellants had not pleaded facts demonstrating a valid cause of action exists that falls within a constitutional or legislative waiver of its governmental immunity from suit. The City specifically argued (1) the trial court lacked subject matter jurisdiction to construe, declare invalid, or enjoin enforcement of a penal ordinance; (2) appellants had not asserted, and could not assert, a valid preemption claim to establish waiver of governmental immunity from suit; (3) there is no waiver of immunity for appellants' request for attorney's fees; and (4) CSAT lacked organizational standing to assert a claim.

Appellants responded to the plea to the jurisdiction arguing the trial court had jurisdiction because they had no other means of challenging the constitutionality of the Ordinance and because the Ordinance impaired vested property rights. They also argued the City was not immune from suit because they were seeking a declaration under the Uniform Declaratory Judgment Act (the DJA)[5] that the Ordinance is invalid. Appellants finally argued CSAT had organizational standing to sue on behalf of its members because the legal and factual bases of the

---

(1) a deferred presentment transaction; or

(2) a motor vehicle title loan.

(b) A credit access business may assess fees for its services as agreed to between the parties. A credit access business fee may be calculated daily, biweekly, monthly, or on another periodic basis. A credit access business is permitted to charge amounts allowed by other laws, as applicable. A fee may not be charged unless it is disclosed.

(c) A person may not use a device, subterfuge, or pretense to evade the application of this subchapter. A lawful transaction governed under another statute, including Title 1, Business & Commerce Code, does not violate this subsection and may not be considered a device, subterfuge, or pretense to evade the application of this subchapter.

TEX. FIN. CODE ANN. § 303.602.

[5] TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (West 2008).

–4–

arguments it asserted did not depend on the circumstances of any one member. The trial court granted the City's plea to the jurisdiction without specifying the ground for doing so.

**Standard of Review**

Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004); *Perez v. City of Dallas*, 180 S.W.3d 906, 909 (Tex. App.—Dallas 2005, no pet.). The claimant has the burden to affirmatively demonstrate the trial court has subject matter jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction. *Heckman*, 369 S.W.3d at 149; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. A plea to the jurisdiction can challenge the sufficiency of the claimant's pleadings or the existence of necessary jurisdictional facts. *See Miranda*, 133 S.W.3d at 226–28. When the plea challenges the claimant's pleadings, we determine whether the claimant has pleaded facts that affirmatively demonstrate the trial court's jurisdiction, construing the pleadings liberally and in favor of the claimant. *Miranda*, 133 S.W.3d at 226. If the pleadings affirmatively negate jurisdiction, the plea should be granted. *Heckman*, 369 S.W.3d at 150. When the plea challenges jurisdictional facts, we consider evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. In performing our review, we do not look to the merits of the claimant's case, but consider only the pleadings and the evidence pertinent to the jurisdictional inquiry. *Heckman*, 369 S.W.3d at 150; *Rawlings v. Gonzalez,* 407 S.W.3d 420, 425 (Tex. App.—Dallas 2013, no pet.).

If the pleadings do not contain enough facts to demonstrate the propriety of jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the claimant should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. But if the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without giving the claimant an opportunity to amend. *Miranda*, 133 S.W.3d at 227; *City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 109–10 (Tex. App.—Dallas 2013, no pet.); *see also In re John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 522 (Tex. 2010) (orig. proceeding) (when claimant is unable to establish jurisdiction, the trial court lacks authority to enter any order other than to dismiss) (citing *State v. Morales*, 869 S.W.2d 941, 949 (Tex. 1994)).

**Subject Matter Jurisdiction**

In one issue, appellants contend the trial court erred by granting the plea to the jurisdiction because (1) although the Ordinance is penal, the trial court had jurisdiction to construe it, (2) the City's governmental immunity is waived for proceedings involving the validity of a municipal ordinance, and (3) CSAT has organizational standing to sue on behalf of its members.

*Penal Ordinance*

The basic test as to whether a law is penal is whether the wrong sought to be redressed is a wrong to the public or a wrong to an individual. *Huntington v. Attrill*, 146 U.S. 657, 668 (1892). Public wrongs involve a violation of public rights and duties, which affect the whole community, considered as a community, and are considered crimes; whereas individual wrongs are infringements of private or civil rights belonging to individuals, considered as individuals, and constitute civil injuries. *Id.* at 668–69; *see also Trop v. Dulles*, 356 U.S. 86, 96 (1958) ("In deciding whether or not a law is penal, this Court has generally based its determination upon the

purpose of the statute. If the statute imposes a disability for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal.").

Here, the Ordinance states its primary purpose is "to protect the welfare of the citizens of the city of Dallas by monitoring credit access businesses in an effort to reduce abusive and predatory lending practices." Dallas, Tex., Code § 50-144. As such, it is clearly addressing a wrong to the public at large. Also, the Ordinance makes it an "offense" for a CAB to violate the provisions of the Ordinance. *Id.* § 50-146(a). A violation of the Ordinance is "punishable" by a fine not to exceed $500 per day per violation. *Id.* § 50-146(a), (b). The Ordinance also provides for a "defense to prosecution" for a violation of the Ordinance. *Id.* § 50-147. We conclude the Ordinance is a penal ordinance. *See State ex rel. Flowers v. Woodruff*, 200 S.W.2d 178, 181 (Tex. Crim. App. 1947) ("There can be no question but that the ordinance under consideration is penal in its nature, as it provides a fine up to $100 for each violation of any part of the ordinance."); *Destructors, Inc. v. City of Forest Hill*, No. 02-08-00440-CV, 2010 WL 1946875, at *3 (Tex. App.—Fort Worth May 13, 2010, no pet.) (mem. op.) (ordinance that used term "unlawful" and gave enforcement authority to police department was a penal ordinance).

*Review of Penal Ordinance*

The meaning and validity of a penal statute or ordinance should ordinarily be determined by a court exercising criminal jurisdiction in order to avoid potentially conflicting decisions between civil and criminal courts of last resort regarding the meaning and validity of a statute. *Morales*, 869 S.W.2d at 945, 947–48 ("prospect of both civil and criminal courts construing criminal statutes 'would tend to "hamstring" the efforts of [law] enforcement officers, create confusion, and might result finally in precise contradiction of opinions between the [civil courts] and the Court of Criminal Appeals to which the Constitution has intrusted supreme and exclusive jurisdiction in criminal matters'" (quoting *Roberts v. Gossett*, 88 S.W.2d 507, 509 (Tex. Civ.

App.—Amarillo 1935, no writ)); *City of Dallas v. Woodfield*, 305 S.W.3d 412, 417 (Tex. App.—Dallas 2010, no pet.); *see also* TEX. CONST. art. V, §§ 3(a), 5(a); *Tex. Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 894 (Tex. 1970) ("The civil courts are not powerless to interpret [a criminal statute], but its meaning and validity should ordinarily be determined by courts exercising criminal jurisdiction."). However, a court exercising civil jurisdiction may exercise equity jurisdiction to construe a criminal statute or ordinance in a "narrow" set of circumstances. *Morales*, 869 S.W.2d at 944; *Woodfield*, 305 S.W.3d at 417; *see also State v. Shoppers World, Inc.*, 380 S.W.2d 107, 110 (Tex. 1964) ("[C]ourts of equity will take jurisdiction to enjoin enforcement of penal laws only in exceptional situations, thus leaving those laws to be interpreted through the criminal trial process whenever possible."). "[A]s a rule, a party cannot seek to construe or enjoin enforcement of a criminal statute in a civil proceeding without a showing of irreparable injury to the party's vested property rights[.]" *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 441 (Tex. 1994) (citing *Morales*, 869 S.W.2d at 945); *see also Woodfield*, 305 S.W.3d at 417 .

There are four types of situations that could arise where a claimant might attempt to obtain relief from an equity court based on the alleged unconstitutionality of a penal statute or ordinance: (1) the statute or ordinance is enforced and the claimant is being prosecuted; (2) the statute or ordinance is enforced and the threat of prosecution is imminent, although the claimant has yet to be prosecuted; (3) there is no actual or threatened enforcement of the statute or ordinance and the claimant does not seek an injunction against its enforcement, but the statute or ordinance is nonetheless integrally related to conduct subject to the court's equity jurisdiction; and (4) there is no actual or threatened enforcement of the statute or ordinance and no complaint of specific conduct remediable by injunction; *Morales*, 869 S.W.2d at 944–45; *Woodfield*, 305 S.W.3d at 417. In this case, neither TitleMax nor Ace has been prosecuted for a violation of the

Ordinance. Further, there is no evidence any other member of CSAT has been prosecuted for a violation of the Ordinance. The City, however, has informed appellants that it intends to enforce the Ordinance and prosecute any CAB that has allegedly violated the Ordinance. Accordingly, the threat of prosecution is imminent. We conclude the facts of this case fall under the second situation identified in *Morales*.

When a penal statute or ordinance is being enforced and, although the claimant has not been prosecuted, prosecution is imminent, an equity court will not interfere with the ordinary enforcement of the statute or ordinance unless the statue or ordinance is unconstitutional and its enforcement will result in irreparable injury to vested property rights. *Morales*, 869 S.W.2d at 945; *see also Woodfield*, 305 S.W.3d at 417 n.2. If the claimant fails to satisfy both prongs of the test, an equity court lacks jurisdiction over the claim. *City of La Marque v. Braskey*, 216 S.W.3d 861, 863 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Potter Cnty. Attorney's Office v. Stars & Stripes Sweepstakes, L.L.C.*, 121 S.W.3d 460, 468 (Tex. App.—Amarillo 2003, no pet.) (citing *Morales*, 869 S.W.2d at 945). "The underlying reason for this rule is that the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction." *Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex. 1969). "When these questions can be resolved in any criminal proceeding that may be instituted and vested property rights are not in jeopardy, there is no occasion for the intervention of equity." *Id.*; *see also Morales*, 869 S.W.2d at 945. "A person may continue his activities until he is arrested and then procure his release by showing that the law is void." *Passel*, 440 S.W.2d at 63; *see also Morales*, 869 S.W.2d at 945.

*Application*

In order for the trial court to have equity jurisdiction over their claims, appellants were first required to establish that the Ordinance is unconstitutional. *See Morales*, 869 S.W.2d at

–9–

945; *Woodfield*, 305 S.W.3d at 417. In its plea to the jurisdiction, the City contended the trial court did not have subject matter jurisdiction because appellants had not asserted, and could not assert, a valid field or conflict preemption claim to establish waiver of governmental immunity from suit. The trial court did not state the ground on which it granted the plea to the jurisdiction, and appellants did not complain in their opening brief on appeal that the trial court erred by determining the Ordinance was not preempted by the Act. After the City noted this deficiency in its response brief, appellants asserted in their reply brief that they adequately alleged in their live pleading that the Ordinance is unconstitutional because it is preempted by state law and "have no obligation to prove the merits of their case at this juncture by demonstrating that the . . . Act is unconstitutional or preempted."

We question whether appellants have waived their complaint on appeal by failing to address all grounds on which the trial court's ruling could have been based. *See* TEX. R. APP. P. 38.1(i); *Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 790 (Tex. App.—Dallas 2012, pet. denied), *cert. denied*, 133 S.Ct. 2812 (2013) (appellant waived any error by trial court in dismissing claims by failing to challenge one possible ground of trial court's ruling on plea to jurisdiction); *Destructors, Inc.*, 2010 WL 1946875, at *2 (to prevail on appeal, appellant was required to "show the trial court could not properly grant the plea to the jurisdiction on any of the grounds asserted by the City"); *San Antonio State Hosp. v. Guerrero*, No. 04–04–00396–CV, 2004 WL 2236619, at *1 (Tex. App.—San Antonio Oct. 6, 2004, no pet.) (mem. op.) (trial court's order denying plea to jurisdiction was affirmed because governmental entity failed to attack on appeal all possible bases for trial court's ruling). However, even if appellants adequately addressed in their brief the issue of whether the Ordinance is unconstitutional or preempted, they have failed to establish under the second prong of the *Morales* test that enforcement of the Ordinance will result in irreparable harm to a vested property interest.

Property rights are created and defined by state law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *Reese v. City of Hunter's Creek Vill.*, 95 S.W.3d 389, 391 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). A person's property interests include actual ownership of real estate, chattels, and money. *Reese*, 95 S.W.3d at 391. The term "'property right' refers to any type of right to specific property, including tangible, personal property." *City of Corpus Christi v. Maldonado*, 398 S.W.3d 266, 270 (Tex. App.—Corpus Christi 2011, no pet.). A right is "vested" when it "has some definitive, rather than merely potential existence." *City of Houston v. Guthrie*, 332 S.W.3d 578, 597 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Tex. S. Univ. v. State Street Bank & Trust Co.*, 212 S.W.3d 893, 903 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)). Property owners do not have a constitutionally protected, vested right to use property in any certain way. *Morrow v. Truckload Fireworks, Inc.*, 230 S.W.3d 232, 238, 240 (Tex. App.—Eastland 2007, pet. dism'd). However, a seller does have a vested property right in the lawful possession of physical items of inventory that it owns. *Maldonado*, 398 S.W.3d at 270; *Morrow*, 230 S.W.3d at 238.

Appellants argue, relying on *Smith v. Decker*, 312 S.W.2d 632, 634 (Tex. 1958), that they have a "vested property right in making a living." *Smith* concerned a state law imposing a state licensing requirement on some persons engaged in the business of writing bail bonds. *See id.* at 633. The statute at issue imposed the requirement on a person, firm, or corporation engaged in the business of writing bail bonds in a county having a city with a population of 350,000 or more and in a county containing in whole or in part a city having a population of not less than 73,000 and not more than 100,000. *Id.* at 635. Ted Smith and other individuals who are not specifically identified in the opinion (the bail bondsmen) were unlicensed but nevertheless engaged in the business of writing bail bonds in Dallas County, which contained a city falling within the second population bracket to which the statute applied. The bail bondsmen filed a mandamus action to

–11–

compel the sheriff to approve one of the bonds, and then amended their pleading to seek injunctive relief on the ground that the statute was unconstitutional. *Id.* The bail bondsmen contended the statute violated Article 3, Section 56 of the Texas Constitution, which prohibited the Legislature from passing any local or special law where a general law could be made applicable, because the population brackets set out in the statute constituted an arbitrary classification that bore no reasonable relationship to the objects the statute sought to accomplish. *Id.* at 634. The trial court denied the bail bondsmen's requested relief and held that the statute was constitutional. *Id.* at 633.

The bail bondsmen appealed directly to the Texas Supreme Court, which reversed the trial court's decision. *Id.* at 633, 637. The supreme court first considered whether the bail bondsmen had adequately shown that the statute in question invaded vested property rights. *Id.* at 633–34. The court concluded the bail bondsmen had "a vested property right in making a living, subject only to valid and subsisting regulatory statutes," and that equity jurisdiction to enjoin enforcement of the statute in question was proper because the statute was preventing them from performing their otherwise lawful business. *Id.* at 634. *Smith* stands for the proposition that a statute harms vested property rights if it completely shuts down an otherwise lawful business.

Post-*Smith* cases, such as *Morrow*, demonstrate that a law that does not forbid a lawful business from operating will not be regarded as harming vested property rights. In *Morrow*, the Eastland Court of Appeals considered whether a district court exercising civil jurisdiction had the authority to grant a fireworks company an injunction that prevented Midland County from enforcing a penal ordinance that banned the outdoor use of fireworks in the county. *Morrow*, 230 S.W.3d at 234, 236–37. The fireworks company alleged it had spent over $300,000 on inventory and over $50,000 for leases and advertising that would be lost if it could not sell its

fireworks because of the ban. *Id.* at 239. The appellate court concluded that, although the company alleged "tremendous financial loss" as a result of the county's ban, the company lacked a vested property interest in the operation of its business of selling fireworks. *Id.* The appellate court recognized the fireworks company had "a property right in the physical items, such as inventory, that it own[ed]," but concluded no vested property right was threatened under the facts presented because the company could still sell its fireworks and was not required to surrender its inventory. *Id.* at 238, 240; *see also Wild Rose Rescue Ranch v. City of Whitehouse*, 373 S.W.3d 211, 216 (Tex. App.—Tyler 2012, no pet.) (appellant failed to show vested property right "because it has no absolute right to use its property for a particular purpose"); *City of Beaumont v. Starvin Marvin's Bar & Grill, L.L.C.*, No. 09-11-00229-CV, 2011 WL 6748506, at *4 (Tex. App.—Beaumont Dec. 22, 2011, pet. denied) (mem. op.) (lessee's use of property as a restaurant with live outdoor music was not vested property right); *Mr. W. Fireworks, Inc. v. Comal Cnty*, No. 03-06-00638-CV, 2010 WL 1253931, at *8 (Tex. App.—Austin Mar. 31, 2010, no pet.) (mem. op.) ("Mr. W does not have a vested property right to sell or dispense fireworks in Comal County."); *Sterling v. San Antonio Police Dept.*, 94 S.W.3d 790, 794 (Tex. App.—San Antonio 2002, no pet.) (appellant's pleading that "loss of business and goodwill resulting [from] cessation of operations will be difficult if not impossible to determine" was insufficient to support jurisdiction because he had no vested property right to lease gambling devices); *Hang On III, Inc. v. Gregg Cnty.*, 893 S.W.2d 724, 727 (Tex. App.—Texarkana 1995, writ dism'd) (property owner did not have vested property right to operate a sexually-oriented business and did not have "a constitutionally protected right in a property merely because it began as a conforming use and is later rendered nonconforming."); *Spartan Industries, Inc. v. State*, 379 S.W.2d 931, 932 (Tex. Civ. App.—Eastland 1964, no writ) (department store did not have vested property interest

sufficient to challenge "Sunday Closing Laws" prohibiting sale of certain merchandise on both of two consecutive days of Saturday and Sunday).

Appellants contend they have property, such as business plans, existing customer lists and loan portfolios, forms, websites, and business methods, that will be affected by the Ordinance. However, they do not argue that the Ordinance forbids them from engaging in the lending business—nor can they, since the Ordinance on its face only regulates the terms under which appellants may offer their services. Appellants, therefore, cannot establish that the Ordinance harms their vested property rights, as necessary for the trial court to have equity jurisdiction to entertain appellants' suit.

Relying on *City of Austin v. Austin City Cemetery Association*, 28 S.W. 528 (Tex. 1894), appellants also contend that their claims are excepted from the general jurisdictional rule set out in *Morales* because they do not have an adequate remedy at law. The ability to assert the unconstitutionality of a penal provision as a defense to a criminal prosecution is an adequate remedy at law. *State v Logue*, 376 S.W.2d 567, 572 (Tex. 1964) (orig. proceeding); *City of Dallas v. Dallas Cnty. Housemovers Ass'n*, 555 S.W.2d 212, 214 (Tex. Civ. App.—Dallas 1977, no writ). Appellants, however, argue this rule should not apply in this case because the City has not prosecuted any CAB under the Ordinance and, therefore, appellants have no ability to challenge the Ordinance in criminal court. They also contend the fines imposed by the Ordinance "could easily grow so large they could cause economic ruin," creating an *in terrorem* effect that forces compliance with the Ordinance.

The ordinance at issue in *City of Austin* limited the location of land used for cemetery purposes to certain areas of the city. *City of Austin*, 28 S.W. at 528–29. The ordinance could be enforced not only against the owner of the property, but also against the family of the deceased who decided to place the body there and against anyone who assisted in the burial of the body.

–14–

*Id.* The supreme court determined the ordinance effectively prevented the business that owned the property from challenging the ordinance's validity because the business's customers would be reluctant to expose themselves to criminal prosecution in order to challenge the law. *Id*. at 529–30; *see also Dallas Cnty. Housemovers Ass'n*, 555 S.W.2d at 214; *Wild Rose Rescue Ranch*, 373 S.W.3d at 217. The court, therefore, had equity jurisdiction to construe the ordinance because, unless a challenge could be asserted prior to prosecution, the ordinance would have the chilling effect of preventing any challenges to its validity. *City of Austin*, 28 S.W. at 530 ("As long as the ordinance remains undisturbed, it acts in terrorem, and practically accomplishes a prohibition against the burial of the dead within the limits of the city of Austin, save in the excepted localities."); *see also Dallas Cnty. Housemovers Ass'n*, 555 S.W.2d at 214; *Wild Rose Rescue Ranch*, 373 S.W.3d at 217.

*City of Austin* is clearly distinguishable from this case. In *City of Austin*, the supreme court made a clear distinction, in the case of a commercial enterprise, between an ordinance prohibiting activities solely of a seller and those imposing criminal penalties on customers as well.[6] The Ordinance imposes no potential liability on a customer of a CAB based on a violation of the Ordinance. If a CAB disregards the Ordinance and provides services that do not comply with the credit restrictions in the Ordinance, the conduct would not subject the CAB's customer to potential criminal liability and would provide the CAB an opportunity to test the validity of the Ordinance as a defense to prosecution. *See Passel*, 440 S.W.2d at 63.

---

[6] In *City of Austin*, the supreme court used the following hypothetical:

> Suppose a city, not having the power under its charter to do so, should pass an ordinance prohibiting the sale of butchers' meat in a certain locality, and suppose it should also prohibit any one from selling meat to be there sold, or from buying in the prohibited place. The ordinance would be void; but could any one say that the business of a market man in the locality might not be effectually destroyed by it? Under such circumstances, we are of opinion that he should have the right to proceed against the corporation to enjoin its enforcement. If a penalty was denounced against no one but the market man who should sell, it would seem that his remedy would be proceed with his business, and defeat any prosecution that should be brought against him for the infraction of the void ordinance.

28 S.W. at 530. Under the Ordinance, a CAB in the City clearly fits within the second scenario and, like the market man, can proceed with its business and contest the Ordinance in any prosecution brought against it. This challenge could be made in a prosecution for a single violation of the Ordinance in which the CAB faced a minimal fine.

As to appellants' claim the City has failed to enforce the Ordinance, leaving appellants with no means to challenge it, the City has informed appellants of its intention to enforce the Ordinance. There is no evidence that TitleMax, Ace, or any other member of CSAT has violated the Ordinance or that the City has failed to file an enforcement action based on any alleged violation of the Ordinance. We cannot conclude, on this record, that the City has deliberately chosen not to enforce the Ordinance.

Appellants have failed to show they do not have an adequate remedy at law or that the enforcement of the Ordinance will cause them any harm other than that inherent in prosecution for an offense. *See Dallas Cnty. Housemovers Ass'n*, 555 S.W.2d at 214; *Starvin Marvin's Bar & Grill, L.L.C.*, 2011 WL 6748506, at *4. Accordingly, the trial court did not err by determining it did not have equity jurisdiction over appellants' claims.

*Declaratory Judgment Act*

Appellants finally assert the trial court erred by granting the City's plea to the jurisdiction because they are seeking a declaration pursuant to the DJA that the Ordinance is invalid, and the DJA contains an express waiver of governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (requiring that municipality be made a party in any suit involving validity of an ordinance). However, the DJA is not an independent source of subject matter jurisdiction, but instead is available only when a court already has jurisdiction over the underlying controversy. *Morales*, 869 S.W.2d at 947 ("A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit."); *see also Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) (DJA is "merely a procedural device for deciding cases already within a court's jurisdiction" (quoting *Tex. Air Control Bd.*, 852 S.W.2d at 444)).

–16–

For the same reasons that a court exercising civil jurisdiction does not have equity jurisdiction to enjoin the enforcement of penal statutes, it does not have equity jurisdiction to render a declaratory judgment regarding the constitutionality of a criminal statute or ordinance. *Morales*, 869 S.W.2d at 947. A court exercising civil jurisdiction "simply has no jurisdiction to render naked declarations of 'rights, status or other legal relationships arising under a penal statute.'" *Id.* (quoting *Malone v. City of Houston*, 278 S.W.2d 204, 206 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.)); *see also Ryan v. Rosenthal*, 314 S.W.3d 136, 143 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). We conclude the trial court did not err by determining it did not have jurisdiction to consider appellants' request for declaratory relief. Based on our resolution of appellants' first two arguments, we need not address appellants' argument that CSAT has organizational standing to assert claims on behalf of its members. *See* Tex. R. App. P. 47.1.

## Conclusion

We conclude the trial court did not err by granting the City's plea to the jurisdiction. We resolve appellants' sole issue against them and affirm the trial court's order dismissing appellants' claims.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

130255F.P05

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CONSUMER SERVICE ALLIANCE OF
TEXAS, INC., TITLEMAX OF TEXAS,
INC., AND ACE CASH EXPRESS, INC.
Appellants

No. 05-13-00255-CV      V.

CITY OF DALLAS, TEXAS, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. 11-08739-A.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Evans participating.

In accordance with this Court's opinion of this date, the trial court's order of dismissal is **AFFIRMED**.

It is **ORDERED** that appellee City of Dallas, Texas recover its costs of this appeal from appellants Consumer Service Alliance of Texas, Inc., TitleMax of Texas, Inc., and Ace Cash Express, Inc.


Judgment entered this 23rd day of May, 2014.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE