

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00146-CV

ACE CASH EXPRESS, INC.                                    APPELLANT

V.

THE CITY OF DENTON, TEXAS                                APPELLEE

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 2013-10564-16

----------

## MEMORANDUM OPINION[1]

----------

Appellant ACE Cash Express, Inc. appeals the trial court's order granting appellee The City of Denton, Texas's plea to the jurisdiction. We affirm.

## Background Facts

In 2011, the Credit Services Organizations Act (the CSO Act) amended the finance code by providing for the licensing and regulation of credit access

---

[1]*See* Tex. R. App. P. 47.4.

businesses (CABs).  *See* Tex. Fin. Code Ann. §§ 393.001–.628 (West 2006 & Supp. 2014).  ACE Cash Express qualifies as a CAB.  In 2013, Denton passed an ordinance that imposed further requirements of CABs.  The ordinance imposed misdemeanor penalties for violations.

ACE claims that the ordinance overwhelmed customers, increased default rates, caused a significant decrease in revenue, and will lead to the closure of at least one of its two Denton locations.  It sought an injunction and declaratory judgment that the ordinance exceeded Denton's police power, violated due process, and exceeded the city's constitutional authority.  Denton filed a plea to the jurisdiction on the grounds that the trial court lacked subject-matter jurisdiction to construe, declare invalid, or enjoin enforcement of the ordinance and that Denton had not waived its governmental immunity.

ACE argued that the trial court had jurisdiction to enjoin enforcement of an unconstitutional criminal statute because customers could be criminally prosecuted for violations of the ordinance under its broad language and because the Texas Declaratory Judgment Act (the TDJA) waives governmental immunity.  *See* Tex. Civ. Prac. & Rem. Code Ann. §37.006(b) (West 2015).  Denton subsequently amended the ordinance to ensure that a penalty could not be assessed against a "consumer."  The trial court granted the plea to the jurisdiction.  ACE appealed.

**Standard of Review**

Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004). The claimant has the burden to affirmatively demonstrate the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Governmental immunity from suit deprives a trial court of subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26. A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009).

Equity courts are not concerned with the enforcement of criminal laws. *Ex parte Sterling*, 122 Tex. 108, 112, 53 S.W.2d 294, 295 (1932). They are, however, concerned with the protection of vested property rights. *Id.* It is this concern that allows equity courts to exercise jurisdiction over criminal laws, but only when those property rights are threatened with irreparable injury. *Id.*

3

**Discussion**

**1. Jurisdiction**

ACE brings three points of error on appeal. In its first point, it argues that the trial court had jurisdiction over its case because it was "effectively barred" from testing the ordinance in criminal court because the ordinance threatens its employees with prosecution. For this argument ACE relies mainly on *City of Austin v. Austin City Cemetery Ass'n*, 87 Tex. 330, 28 S.W. 528 (1894).

In *City of Austin*, the supreme court held that a criminal statute prohibiting burying bodies in parts of the city that could be enforced against customers as well as businesses (in that case, the cemetery) could be challenged in an equity court. 87 Tex. at 337, 28 S.W. at 530. To get into a criminal court, the cemetery would have had to violate the statute. Such violation would have required the participation of its customers. But the threat of prosecution under the statute prevented customers from engaging the business. *Id.* ("Under these conditions, who would venture to bury, or be concerned in burying, a dead body in appellee's ground, or who would purchase a lot in its cemetery?"). Without the customers' participation, the cemetery was effectively barred from challenging the statute's validity. Thus, it was necessary for the cemetery to seek relief from a court of equity.

ACE attempts to align its situation with that found in *City of Austin* by arguing that the same barrier to challenging the statute in that case is present here because the statute could be enforced against its employees. It reads *City*

4

*of Austin*'s frequently cited rhetorical question—"Under these conditions, who would venture to bury, or be concerned in burying, a dead body in appellee's ground, or who would purchase a lot in its cemetery?" *Id.*—as referring to the cemetery employees who would "be concerned in burying." Courts have consistently understood the concern in *City of Austin* to regard the prosecution of customers of the cemetery, not the employees. *See, e.g.*, *Consumer Serv. Alliance of Tex., Inc. v. City of Dallas*, 433 S.W.3d 796, 808 (Tex. App.—Dallas 2014, no pet.); *Destructors, Inc. v. City of Forest Hill*, No. 02-08-00440-CV, 2010 WL 1946875, at *4 (Tex. App.—Fort Worth May 13, 2010, no pet.) (mem. op.); *City of Dallas v. Dallas Cnty. Housemovers Ass'n*, 555 S.W.2d 212, 214–15 (Tex. Civ. App.—Dallas 1977, no writ); *Malone v. City of Houston*, 278 S.W.2d 204, 206 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.). Even the other case upon which ACE relies notes that the distinction emphasized by *City of Austin* is between the seller and its customer, not seller and its agent. *See Robinson v. Jefferson Cnty.*, 37 S.W.3d 503, 508 (Tex. App.—Texarkana 2001, no pet.) ("The [*City of Austin*] court makes a clear distinction, in the case of a commercial enterprise, between an ordinance prohibiting activities solely on the part of the seller and those imposing criminal penalties on customers as well."). Further, this court has previously found jurisdiction lacking even when employees were cited for violating the ordinance. *See Destructors*, 2010 WL 1946875, at *1 (holding no jurisdiction over ordinance prohibiting commercial motor vehicles from using residential streets after company employees received citations). The

5

ordinance at issue in this case does not penalize customers of CABs. Denton also noted at the hearing on its plea to the jurisdiction that under the penal code, the corporation would bear criminal responsibility for any offense performed by an agent acting on its behalf. *See* Penal Code Ann. § 7.22(a) (West 2011). Thus, the factor present in *City of Austin* that granted jurisdiction over that case is lacking here.

ACE also argues that Denton refuses to prosecute ACE's self-reported violations, and Denton has thus created an in terrorem effect by which it can force compliance with the ordinance without allowing ACE to challenge the ordinance's constitutionality. *See City of Austin*, 28 S.W. at 530 ("As long as the ordinance remains undisturbed, it acts in terrorem, and practically accomplishes a prohibition against the burial of the dead within the limits of the city of Austin, save in the excepted localities."). ACE sent letters to the City Attorney's office stating that "during the week of December 2, 2013, an ACE office in Denton made loans on terms that did not comply with the supposed requirements of the Ordinance" and that "subsequent to [the first letter], an office of ACE . . . in Denton made additional loans on terms that did not comply with the supposed requirements of [the ordinance]." Denton argued at the hearing on its plea that the letters were too vague to form the basis of a criminal complaint. It said,

> It's not going to suffice if some corporation says, oh, one of these days, a couple of weeks ago, we violated the law somehow.
>
> We cannot—we cannot base a prosecution on a complaint of that nature. The complaint must specify manner and means, it must

6

specify dates per the Texas Code of Criminal Procedure. The date of offense is a mandatory element.

ACE's vice president of loans and chief e-commerce and lending officer testified that he had not filed an offense report with Denton police, had not signed any criminal complaint, and had not provided specific information to a law enforcement authority regarding the incidents mentioned in the letters. ACE did not demonstrate that it has been or would be unable to challenge the ordinance in a criminal court. We overrule ACE's first point.

In its second point, ACE argues that the trial court erred by granting Denton's plea to the jurisdiction because enforcement of the ordinance would result in irreparable injury to vested property rights. *See State v. Morales*, 869 S.W.2d 941 (Tex. 1994). In *Morales*, the supreme court held that when a criminal statute is being enforced against a party or his prosecution is imminent, an equity court may have jurisdiction when "the statute is unconstitutional and there is a threat of irreparable injury to vested property rights." *Id.* at 944–45. When the threat is to personal rights alone, there is no jurisdiction. *Id.* at 946. The court acknowledged that because the statute was not being enforced, the plaintiffs were deprived of a forum in which to adjudicate the constitutionality of the law. *Id.* at 947. However, it noted that "equity jurisdiction does not rise or fall solely on the basis of the adequacy of their remedy at law." *Id.*

"Texas courts have held that vested rights are those that imply an immediate right or an entitlement—those that are not based upon mere

7

expectation or contingency." *Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 226 (Tex. App.—Austin 2008, no pet.); *see Walls v. First State Bank of Miami*, 900 S.W.2d 117, 121–22 (Tex. App.—Amarillo 1995, writ denied) ("To be vested, a right must be more than a mere expectancy based on an anticipated continuance of an existing law . . . ; it must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from the demand of another."). A right is "vested" when it "has some definitive, rather than merely potential existence." *City of La Marque v. Braskey*, 216 S.W.3d 861, 864 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (quoting *Tex. S. Univ. v. State Street Bank & Trust Co.*, 212 S.W.3d 893, 903 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)).

ACE claims that its affected property includes loan contracts that had to be modified to comply with the ordinance, "its contractual rights to renew, extend, or refinance loans that were originally issued *before* the Ordinance went into effect," and its revenue. The ordinance did not deprive ACE of any physical property, did not retroactively cancel any loans already made, and did not forbid ACE from engaging in its business but only regulated the terms under which it may offer its services. *See Consumer Serv. Alliance of Tex.*, 433 S.W.3d at 807. ACE did not have a vested property right to its contractual options to renew, extend, or refinance the loans. *See Govant v. Houston Cmty. Coll. Sys.*, 72 S.W.3d 69, 76 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("At most, therefore, Govant had only a unilateral and unreasonable expectation that his contract would be

8

renewed for another year. 'Such an expectation is not a constitutionally protected property interest giving rise to due process requirements.'" (quoting *Nelson v. Clements*, 831 S.W.2d 587, 591 (Tex. App.—Austin 1992, writ denied)); *see also State v. Logue*, 376 S.W.2d 567, 572 (Tex. 1964) (holding that company was not entitled to injunctive relief based on fact that it had entered into leases that would be affected by the statute). Likewise, there is no vested property right in possible future revenue or the ability to continue to sell certain products. *See Malone*, 278 S.W.2d at 206 (holding that there was no irreparable injury to property rights when ordinance banned sale of certain type of comic books when no destruction or confiscation of property was provided for).

In the second part of its second point, ACE argues that *Morales* requires Denton to demonstrate that the ordinance is constitutional. *See* 869 S.W.2d at 941. *Morales* held that "intervention by any equity court is inappropriate . . . unless the statute is unconstitutional *and* there is a threat of irreparable injury to vested property rights. *Id.* at 945 (emphasis added); *see Dallas Cnty. Housemovers*, 555 S.W.2d at 214 (noting that when plaintiff fails to show that an ordinance is void and its enforcement will result in irreparable harm to a vested property right, there is no civil jurisdiction to issue an injunction against a penal ordinance). Because, as we have already held, ACE failed to show irreparable harm to a vested property right, a civil court cannot enjoin enforcement of the penal ordinance. We overrule ACE's second point.

9

## 2. Waiver

In its third point, ACE argues that the trial court erred by granting Denton's plea to the jurisdiction because the TDJA expressly waives immunity from suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (requiring that municipality be made a party in any suit involving validity of an ordinance). The TDJA is not an independent source of subject matter jurisdiction; it is available only when a court already has jurisdiction over the underlying controversy. *Consumer Serv. Alliance of Tex.*, 433 S.W.3d at 809 ("A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit." (quoting *Morales*, 869 S.W.2d at 947)). As discussed above, ACE did not independently establish jurisdiction. The trial court therefore did not err by concluding that the TDJA did not provide for jurisdiction over ACE's claims. *See id.* We overrule ACE's third point.

## Conclusion

Having overruled ACE's three points of error, we affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GABRIEL, and SUDDERTH, JJ

DELIVERED: June 4, 2015

10