

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00084-CV

WILLIAM D. LAYTON                                                    APPELLANT

V.

CITY OF FORT WORTH, CITY OF                                          APPELLEES
FORT WORTH EMPLOYEES'
RETIREMENT FUND, AND BOARD
OF CITY OF FORT WORTH
EMPLOYEES' RETIREMENT FUND

----------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 141-265436-13

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

# I. INTRODUCTION

Appellant William D. Layton filed suit in district court against Appellees City of Fort Worth (the City), City of Fort Worth Employees' Retirement Fund (the Fund), and Board of City of Fort Worth Employees' Retirement Fund (the Board) after the Board terminated Layton's disability benefits under the Fund. The Board and the Fund filed a plea to the jurisdiction, seeking to dismiss Layton's claims for lack of subject-matter jurisdiction. The trial court granted the plea, and Layton now appeals, raising five issues. We will affirm.

# II. BACKGROUND

The Fund is a non-statewide retirement system that was established by the City's Charter and Code of Ordinances. *See* Admin. Rules & Procedures, Fort Worth Employees' Ret. Fund, R. 1.101 (eff. Jan. 25, 2012); *see also* Fort Worth City Charter ch. XXVII, § 36; Fort Worth, Tex. Rev. Ordinances ch. 2.5, art. I (2014); Tex. Rev. Civ. Stat. Ann. art. 6243i (West 2010). It "was placed under the exclusive administration and management of a Board of Trustees by Article 6243i of the Texas Revised Civil Statutes for the purpose of providing retirement benefits" to members of the Fund. Admin. Rules & Procedures, Fort Worth Employees' Retirement Fund, R. 1.101. In addition to a retirement pension, both the City's Code of Ordinances and the Fund's Administrative Rules and Procedures contain provisions for a disability pension. *See* Fort Worth, Tex.

2

Rev. Ordinances ch. 2.5, art. I, Div. 1, § 2.5-7 (2014); Admin. Rules & Procedures, Fort Worth Employees' Ret. Fund, R. 9.

Layton worked for the City's Street Department as an equipment operator. In June 2007, he injured his spine while on duty. Layton later applied for—and in January 2010 began receiving—disability benefits as provided by the Fund.

On July 10, 2012, the Board's Disability Committee reviewed Layton's disability case. Layton was unable to attend, but the Committee voted to recommend to the Board that his disability benefits be suspended.

Several days later, on July 12, 2012, the Board conducted a hearing at which Layton testified and presented evidence regarding his disability. According to Layton, at this hearing, the Board "confronted [him] with a video of him he had not previously seen, and questioned him about activities portrayed in the video, without first revealing it to him, and allowing him to review it, in a manner calculated to embarrass and harass [him]."[2] The Board voted to delay suspending Layton's disability benefits and to have him examined by the Board's doctor.

---

[2]According to the Board and the Fund, the video apparently depicted Layton "exercising" and "moving around"—"doing things that were inconsistent with the claim of disability."

On September 19, 2012, Layton appeared before the Disability Committee and testified and presented evidence regarding his disability.[3] The Committee voted to recommend to the Board that Layton's disability benefits be suspended.

Soon thereafter, on September 26, 2012, Layton and his wife testified at a hearing before the Board. After considering the evidence, the testimony, and the opinion of the Board's medical advisor, the Board terminated Layton's disability benefits, effective October 1, 2012.

Layton filed his original petition against Appellees in April 2013, alleging claims for "Violation of Fund," "Violation of Duty under Municipal Law," "Violation of Fiduciary Duty or Duty of Good Faith and Fair Dealing or Other Special Duties," "Breach of Contract," "Unjust Enrichment or Money Held and Received," "Negligence," and "Violation of Due Process." Layton sought "actual damages" for each claim except the "Violation of Fund" claim, and in his amended petition, he also pleaded for "reinstatement of benefits of $2,244.20 per month he was receiving prior to October 1, 2012" and, alternatively, "payment of the present value of future benefits at a 5% interest rate through age 80, . . . equal to $553,767.83," but "only if the doctrine of governmental immunity is not otherwise applicable."

---

[3]Layton averred that the Committee "did not legitimately hold a hearing on September 19, 2012, because it was without a quorum and the time for hearing was unfairly limited."

The Board and the Fund filed a plea to the jurisdiction, arguing that the termination order was not reviewable and that governmental immunity barred each of Layton's claims. The trial court granted the plea without stating a reason for its ruling.

### III. STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). If a court lacks subject-matter jurisdiction in a particular case, then it lacks authority to decide that case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (reasoning that subject-matter jurisdiction is essential to the authority of a court to decide a case). The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Id.* at 446. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Governmental immunity from suit deprives a trial court of subject-

5

matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26.

## IV. AVAILABILITY OF JUDICIAL REVIEW

Layton argues in his first and second issues that the trial court erred by granting the Fund's and the Board's plea to the jurisdiction because his claims fall within an exception to the doctrine of governmental immunity—both the Fund and the Board are municipal entities, and their provision of disability benefits is a proprietary function. In his third issue, Layton argues that even if the municipality/proprietary function exception to governmental immunity does not apply, the trial court still erred by dismissing his contract, unjust enrichment, and money had and received claims because he also sought the equitable remedy of reinstatement in connection with those claims, and claims seeking equitable relief are not barred by governmental immunity.

The Fund and the Board have two responses to Layton's first through third issues: (1) they are not municipalities but instead are State-created governmental entities that are entitled to governmental immunity in the absence of a clear and unambiguous waiver of immunity, and Layton failed to establish such a waiver for each of his claims, and, alternatively, (2) regarding Layton's claims that do not allege a constitutional violation, no statute provides a right to judicial review of the Board's order terminating disability benefits under the Fund. Anticipating the latter argument, Layton contends in his fifth issue that the trial

6

court could not have relied on the "doctrine of finality" to grant the plea to the jurisdiction. We address the Fund's and the Board's dispositive judicial-review argument.

Texas law recognizes no right to judicial review of an administrative order unless (1) a statute expressly provides the right, (2) the order adversely affects a vested property right, or (3) the order otherwise violated some constitutional right. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001); *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000). Here, no statute provides a right to judicial review of a Board order terminating disability benefits under the Fund, including article 6243i. Thus, constitutional claims aside, Layton has no right to judicial review of the Board's order. *See, e.g.*, *Tex. Comm'n on Envtl. Quality v. Bonser-Lain*, 438 S.W.3d 887, 893–94 (Tex. App.—Austin 2014, no pet.) (concluding that the Administrative Procedures Act did not provide a right to judicial review of an agency's refusal to adopt rules because it was silent as to the matter); *City of Houston v. Vitek*, 849 S.W.2d 882, 884 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("There is no statute vesting jurisdiction in the district court to review the administrative decisions of the Civil Service Commission.").

Layton argues that there is such a right to review because section 2.01(c) of article 6243i "permits finality at the level of a board of trustees of only decisions concerning eligibility," which he says are not involved here, and

7

matters not given exclusively to the Board, such as whether to terminate disability benefits, which is involved here, fall within the jurisdiction and power of the trial court.[4] To the extent that Layton urges us to conflate legislative silence regarding judicial review with express legislative authority permitting judicial review, we decline to do so. *See Little-Tex Insulation Co.*, 39 S.W.3d at 599. To the extent that Layton's argument implicates the doctrine of exclusive jurisdiction, in *Houston Municipal Employees Pension System v. Ferrell*, the supreme court considered the relevance of an exclusive-jurisdiction argument when, as here, no statute afforded a right to judicial review:

> When the Legislature grants an administrative agency sole authority to make an initial determination in a matter, the agency has exclusive jurisdiction over the matter. The doctrine of exclusive jurisdiction concerns a trial court's original jurisdiction and is relevant when the plaintiff has not exhausted his administrative remedies. Only after exhaustion has occurred may a plaintiff seek judicial review of the administrative decision, *and then he may do so "only at the time and in the manner designated by statute."*
>
> In this case, the 29 plaintiffs claim to have exhausted all of their administrative remedies. HMEPS contested the 29 plaintiffs' claim of exhaustion in the trial court but does not oppose their claim of exhaustion on appeal to this Court. The record is unclear as to whether exhaustion in fact occurred. *But it is important to note that whether the 29 plaintiffs exhausted their administrative remedies is of no consequence in this case if, as HMEPS argues, Article 6243h expressly denies pension members a right to judicial review of the pension board's determinations, or is silent as to that question.* There is no right to judicial review of an administrative order unless a

---

[4]Section 2.01(c) states that "[a] person may appeal the determination regarding the person's eligibility to be a participating member to the board of trustees. The board's decision regarding eligibility is final." Tex. Rev. Civ. Statutes Ann. art. 6243i, § 2.01(c).

statute explicitly provides that right or the order violates a constitutional right. . . .

Article 6243h provides that "[t]he determination of any fact by the pension board and the pension board's interpretation of this Act are final and binding on any interested party." The words "final and binding," when used to describe an administrative decision, preclude judicial review. . . .

. . . *Because the Legislature has not authorized the trial court to grant the relief sought, the trial court lacks jurisdiction over the case.*

248 S.W.3d 151, 157–59 (Tex. 2007) (emphasis added) (citations and footnotes omitted). Layton's exclusive-jurisdiction argument is therefore unpersuasive because, ultimately, no statute provides a right to judicial review of the Board's order terminating disability benefits under the Fund.[5] *See id.*

We hold that the trial court did not err by granting the Fund's and the Board's plea to the jurisdiction as to Layton's claims that do not allege a constitutional violation, including the claims for which he alternatively sought equitable relief—those for "Violation of Fund," "Violation of Duty under Municipal Law," "Violation of Fiduciary Duty or Duty of Good Faith and Fair Dealing or Other Special Duties," "Breach of Contract," "Unjust Enrichment or Money Held

---

[5]The absence of a statutory right to judicial review here is consistent with both the City's Ordinances and the Fund's Administrative Rules and Procedures. *See* Fort Worth, Tex. Rev. Ordinances ch. 2.5, art. I, Div. 1, § 2.5-7(c)(7) ("The Board's determination on all matters concerning the granting, refusing or revoking of a disability pension shall be final and conclusive on all parties, and no appeal can be made therefrom."); Admin. Rules & Procedures, Fort Worth Employees' Ret. Fund, R. 9.104(G) ("The Board's determination on all matters concerning the granting, refusing or revoking of a disability pension shall be final and conclusive on all parties, and no appeal can be made there from.").

and Received," and "Negligence." Accordingly, we overrule Layton's first, second, third, and fifth issues.

## V. CONSTITUTIONAL CLAIMS

Layton's fourth issue implicates the other two exceptions to the general rule that there is no right to judicial review of an administrative order. He argues that the trial court erred by granting the Fund's and the Board's plea to the jurisdiction as to his claims that the Board, by terminating his disability benefits, (1) unconstitutionally divested him of a vested property right and (2) violated his right to due course of law under the Texas constitution.[6] *See Little-Tex Insulation Co.*, 39 S.W.3d at 599.

### A. Vested Property Right

Layton argues that he has a vested property right, subject to due process protections, in the disability benefits that he was receiving under the Fund. *See Brazosport Sav. & Loan Ass'n v. Am. Sav. & Loan Ass'n*, 161 Tex. 543, 548–49, 342 S.W.2d 747, 750 (1961) ("When a vested property right has been adversely affected by the action of an administrative body so as to invoke the protection of due process, an inherent right of appeal is recognized.").

A person's property interests include actual ownership of real estate, chattels, and money. *Consumer Serv. Alliance of Tex., Inc. v. City of Dallas*, 433 S.W.3d 796, 805 (Tex. App.—Dallas 2014, no pet.). A right is "vested" when it

---

[6]The Fund and the Board challenged Layton's constitutional claims below. Layton's quasi-preservation arguments are without merit.

10

has some definitive, rather than merely potential, existence. *Id.* "Texas courts have held that vested rights are those that imply an immediate right or an entitlement—those that are not based upon mere expectation or contingency." *Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 226 (Tex. App.—Austin 2008, no pet.); *Walls v. First State Bank of Miami*, 900 S.W.2d 117, 121–22 (Tex. App.—Dallas 1995, writ denied) ("To be vested, a right must be more than a mere expectancy based on an anticipated continuance of an existing law . . . ; it must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from the demand of another.").

The City's Ordinances and the Fund's Administrative Rules and Procedures contain numerous mandatory conditions and requirements that must be met to initially receive, and then to continue to receive, disability benefits under the Fund, including, but not limited to, the following:

•a Member must meet the definition of "disabled";

•the disability must exist for ninety consecutive days prior to application for a disability pension;

•no disability pension shall exceed the Member's rate of earnings;

•continuation of a disability pension is subject to review and determination of the Member's eligibility for a disability pension;

•to qualify for a disability pension, a physician must determine that the Member is not capable of performing the essential functions of certain positions;

•the Member must submit to an annual medical examination;

•if at any time the Board has a reasonable doubt whether the Member is disabled, it may suspend the disability pension until the doubt is removed;

•no disability pension shall be payable during any period for which wages are received from the City, the State of Texas, or any other branch of the government while performing the duties of a firefighter or a peace officer;

•to continue receiving a disability pension, the Member must have complied with the medical recommendations of the Member's treating physician; and

•the Board shall withhold a disabled Member's disability pension upon the Member's failure to timely submit required income tax returns.

Fort Worth, Tex. Rev. Ordinances ch. 2.5, art. I, Div. I, § 2.5-7(a), (b)(1), (b)(3), (b)(5), (c)(1), (c)(2), (c)(3), (c)(5), (c)(9), (f)(3); Admin. Rules & Procedures, Fort Worth Employees' Retirement Fund, R. 9.101, 9.103, 9.104, 9.108. These numerous conditions and requirements all but guarantee that a qualifying member has but a mere expectancy in receiving disability benefits under the Fund. Indeed, nowhere is this more apparent than by considering Ordinance section 2.5-7(e), which states, "If the Board determines that a disabled Member receiving a disability pension hereunder is no longer disabled as above defined, the Member's disability pension shall immediately cease." Fort Worth, Tex. Rev. Ordinances ch. 2.5, art. I, Div. I, § 2.5-7(e); *see also* Admin. Rules & Procedures, Fort Worth Employees' Retirement Fund, R. 9.107 (stating the same). The notion that disability benefits under the Fund can constitute a vested right is completely incompatible with the Board's ability to immediately cease a disability pension upon a determination that a member is no longer disabled.

12

We hold that the trial court did not err by granting the plea to the jurisdiction as to Layton's deprivation claim because he has no vested right to the disability benefits under the Fund. *See Wilson v. Tex. Workers' Comp. Comm'n*, No. 12-01-00337-CV, 2003 WL 22681793, at *6 (Tex. App.—Tyler Nov. 13, 2003, no pet.) (mem. op.) (holding that appellant did not have a vested property right in additional workers' compensation benefits because "he would be entitled to additional benefits only in the event his impairment rating is ultimately determined to be higher than five percent"). We overrule this part of Layton's fourth issue.

## B. Due Course of Law

Layton alleged a claim for violation of his due course of law rights under the Texas constitution. *See* Tex. Const., art. I, § 19. He states that "the disposition of [his] claim for disability pension benefits involved highly unfair conduct on the part of Appellees inconsistent with [his] right to not only a meaningful opportunity to be heard, but to an unbiased decisionmaker and to a decision not arbitrary and unreasonable." Layton acknowledges that his claim is barred to the extent that he seeks to recover damages for the purported constitutional violation, *see Smith v. City of League City*, 338 S.W.3d 114, 127 (Tex. App.—Houston [14th Dist.] 2011, no pet.), but he directs us to our opinion in *City of Fort Worth v. Jacobs*, 382 S.W.3d 597 (Tex. App.—Fort Worth 2012, pet. dism'd), and contends that he additionally sought the equitable remedy of

13

"reinstatement" and that "an exception to governmental immunity exists for equitable relief of reinstatement sought in connection with a claim of a violation of the Texas Constitution." According to his amended petition, Layton sought "reinstatement of [disability] benefits of $2,244.20 per month he was receiving prior to October 1, 2012."

The Fund and the Board respond that *Jacobs* is inapposite because although it did hold that governmental immunity does not bar a claim that seeks the equitable relief of reinstatement for an alleged constitutional violation, the appellant in that case had sought reinstatement *to her position of employment*, not reinstatement *of the ongoing payment of monetary benefits*, as Layton does here. The Fund and the Board argue that this case is more like *City of Seagoville v. Lytle*, 227 S.W.3d 401, 410 (Tex. App.—Dallas 2007, no pet.), in which the appellate court held that the portion of the appellant's declaratory judgment claim seeking back pay and benefits was a claim for money damages and, therefore, barred by governmental immunity.

We find neither *Jacobs* nor *Lytle* persuasive because Layton is seeking neither reinstatement to a position of employment nor back pay and benefits; he seeks prospective relief in the form of reinstatement and payment of his disability benefits under the Fund. We instead find caselaw addressing declaratory judgment claims complaining of ultra vires acts by state officials more pertinent

14

because they touch upon a consideration that is particularly relevant here: control.

Suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Such a suit seeks relief against a state official who allegedly acted outside of or without legal authority. *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied). On the other hand, a suit that complains about an official's exercise of discretion within her legal authority is barred by immunity. *Id.* The difference between the two claims revolves around the concept of control; a claim complaining that a state official acted without legal authority *does not* attempt to exert any control over the state (it merely attempts to reassert the control of the state), but a claim complaining of an official's exercise of discretion within her legal authority *does* attempt to exert control over the state. *See Heinrich*, 284 S.W.3d at 372. Therefore, claims that seek to control the State or its officials in the exercise of discretionary statutory or constitutional authority are barred by sovereign immunity. *See Creedmore-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515 (Tex. App.—Austin 2010, no pet.) ("And the fact that Creedmore does not seek monetary relief . . . is not dispositive because its claims would equally implicate sovereign immunity if the effect of the remedy sought was to control state action.").

15

Layton seeks reinstatement of his disability benefits for alleged violations of his due course of law rights. This remedy unquestionably implicates the concept of control because, as explained above, the Board evaluates numerous conditions and requirements that must be met before it renders a decision that a member may or may not receive disability benefits. In performing that function, the Board exercises what would otherwise be a discretionary act. *See McLane*, 148 S.W.3d at 649 (stating that a discretionary act is one that requires the exercise of personal deliberation, decision, and judgment). If Layton were to prevail on his due course of law claim and obtain the relief that he seeks, the Board would not engage in any of the deliberation, decision-making, and judgment that it normally exercises in determining whether a member has met each condition and requirement for receiving disability benefits; instead, Layton would simply receive the benefits, even if he failed to meet one or more of the Fund's numerous prerequisites. By circumventing the Board's authority to administer the Fund pursuant to the City's Ordinances and the Fund's Administrative Rules and Procedures, Layton's remedy seeking reinstatement of disability benefits would improperly exert absolute control over the Board's decision-making process regarding his entitlement to disability benefits. Layton's due course of law claim therefore implicates the Fund's and the Board's immunity from suit. *See Heinrich*, 284 S.W.3d at 370–72; *Creedmore-Maha Water Supply Corp.*, 307 S.W.3d at 515. Under these limited facts, we hold that the trial court

16

did not err by granting the Fund's and the Board's plea to the jurisdiction as to Layton's due course of law claim, and we overrule the remainder of his fourth issue.

## VI. CONCLUSION

Having overruled all of Layton's issues, we affirm the trial court's order granting the Fund's and the Board's plea to the jurisdiction.[7]

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DELIVERED:  December 11, 2014

---

[7]We decline Layton's invitation to modify the trial court's order granting the plea to the jurisdiction to expressly state that the claims are dismissed without prejudice because, as written, the order does not state that the claims are dismissed with prejudice.  *Cf. Garrett v. Williams*, 250 S.W.3d 154, 156 (Tex. App.—Fort Worth 2008, no pet.) (addressing issue that trial court erred by dismissing petition with prejudice).

17