

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00392-CV

_____

THE TOWN OF FLOWER MOUND, TEXAS; THE ZONING BOARD OF ADJUSTMENT FOR
THE TOWN OF FLOWER MOUND, TEXAS; AND THE OIL & GAS BOARD OF APPEALS
FOR THE TOWN OF FLOWER MOUND, TEXAS, Appellants

V.

EAGLERIDGE OPERATING, LLC, Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 18-9622-431

Before Sudderth, C.J.; Gabriel, J., and Wallach, J.[1]
Memorandum Opinion by Visiting Judge Mike Wallach, Sitting by Assignment
Concurring and Dissenting Memorandum Opinion by Justice Sudderth

---

[1]The Honorable Mike Wallach, Judge of the 348th District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

## MEMORANDUM OPINION

This is an interlocutory appeal from the issuance of a temporary injunction authorized by Texas Civil Practice and Remedies Code section 51.014(a)(4). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014. For the reasons stated below, the temporary injunction issued by the trial court is reversed and the case is remanded to the trial court.

## I. SUMMARY OF THE FACTS

In December 2012, Appellee EagleRidge Operating, LLC, assumed operation of a number of oil and gas wells located in the Town of Flower Mound, Texas (the Town). Appellee agreed to conduct all drilling, completing, and producing well operations of the previously approved permits for those wells. Appellee subsequently assumed operations of additional wells by permit transfer. A byproduct of Appellee's oil and gas operations is wastewater, which is removed from the well sites by tanker truck to storage or treatment facilities.

Prior to Appellee initially assuming operation of the wells, the Town had enacted Section 34-422(g) of the Code of Ordinances ("the Ordinance"), which provided:

> Work hours for oil and gas well permits. Site development, other than drilling, shall be conducted only between 7:00 a.m. and 7:00 p.m. Monday through Friday and between 9:00 a.m. and 5:00 p.m. on Saturday. Truck deliveries of equipment and materials associated with drilling and/or production, well servicing, site preparation and other related work conducted on the well site shall be limited to the same work hour restrictions identified above except in cases of fires, blowouts,

2

explosions, and any other emergencies or where the delivery of equipment is necessary to prevent the cessation of drilling or production. The operator may request a variance from the oil and gas board of appeals, pursuant to section 34-432 of this article.

Flower Mound, Tex., Code of Ordinances § 34-422(g) (2019). The Ordinance was enacted, in part, because "natural gas drilling and production operations involve or otherwise impact the Town's environment, infrastructure[,] and related public health, welfare[,] and safety matters[.]" Flower Mound, Tex., Ordinance 29-11 (July 18, 2011). It was also expressly stated that the purpose of such regulations in the Code of Ordinances was "to protect the health, safety and general welfare of the public; minimize the potential impact to property and mineral rights owners[;] protect the quality of the environment[;] and encourage the orderly production of available mineral, oil, and gas resources." Flower Mound, Tex., Code of Ordinances § 34-416 (2019). The Town first enacted the Ordinance in 2003. From its initial operation of oil and gas wells in Flower Mound until approximately August 2018, Appellee complied with the Ordinance with the exception of a single incident. Specifically, Appellee complied with the Ordinance by hauling away wastewater during the hours required by the Ordinance. In fact, Appellants did not become aware that Appellee had an issue with the Ordinance's work-hours restriction until May 2018.

In 2018, Appellee filed three separate actions with the Town's Zoning Board of Adjustments ("BOA") and the Town's Oil & Gas Board of Appeals ("OGB"). First,

Appellee requested a variance to the Ordinance from the OGB to permit the removal of wastewater from gas well sites outside the hours established in the Ordinance.

Second, Appellee appealed to the BOA and OGB the determination by Town staff that the Ordinance applied to the collection and hauling of wastewater, arguing in part that the Ordinance does not apply to such activities.

Third, Appellee appealed to the BOA and OGB the Town Manager's determination that Chapter 621 of the Texas Transportation Code did not preempt the Town's authority to restrict wastewater hauling under the Ordinance. During the pendency of Appellee's appeals to the BOA, the Town did not attempt to enforce the provisions of the Ordinance being appealed by Appellee.

Appellee also submitted an application to the Town seeking a determination that the Ordinance was preempted by Section 81.0523 of the Texas Natural Resources Code. Tex. Nat. Res. Code Ann. § 81.0523. The Town advised Appellee it could not issue a determination on this matter on the basis that it did not have enough information, which had been requested from Appellee and which was not produced. On October 10, 2018, the BOA and OGB denied Appellee's requested variance and appeals. On October 12, the Town's Oil and Gas Well Inspector gave notice by email to Appellee that the Town had received complaints about after-hours hauling in violation of the Ordinance, and the Town would issue citations for such violations. As per the Town's Code of Ordinances, any violation of the Ordinance is considered "unlawful" and is punishable by a fine. Flower Mound, Tex., Code of Ordinances

4

§ 34-433(a) (2019). On October 14, the Town issued Appellee a citation for hauling produced wastewater on a Sunday in violation of the Ordinance. The citation specifically stated that Appellee was in violation of the Ordinance.

On October 16, Appellee filed its Original Petition and Application for Writ of Certiorari. On October 17, Appellee filed its Application for Temporary Restraining Order and Temporary Injunction, which sought to enjoin the enforcement of the Ordinance against Appellee. On November 8, Appellants filed their Response to Appellee's Application for Temporary Injunction, which challenged the trial court's subject-matter jurisdiction to grant equitable relief relating to the Ordinance, which they alleged is penal in nature. Specifically, Appellants argued that (1) a court has no jurisdiction to enjoin the enforcement of a penal ordinance unless the ordinance is void or unconstitutional and its enforcement causes irreparable injury to vested property rights and (2) "[t]here is no vested right to haul water outside the work hours" established by the Ordinance.

The trial court held a hearing on Appellee's Application on November 8. Later that day, the court granted Appellee's requested temporary injunction, which enjoined Appellants from engaging in:

> [a]ny enforcement action against [Appellee] Eagle[R]idge Operating, LLC, its employees or contractors, under or pursuant to Section 34-422(g) of the Town's ordinances, relating to work hours for oil and gas well permits, that has the intent or effect of restricting the hours in which Eagle[R]idge Operating, LLC, its employees or contractors may haul-off produced water from Eagle[R]idge Operating, LLC's oil and gas production facilities, including without limitation, the issuance of

5

municipal citations to Eagle[R]idge Operating, LLC, its employees or contractors.

In granting the temporary injunction, the trial court found it had subject-matter jurisdiction to enjoin the enforcement of the Ordinance, and also entered the temporary injunction despite alleged insufficient evidence of a vested property right and alleged insufficient evidence of an irreparable injury.

## II. STANDARD OF REVIEW

The sole point raised by Appellants is that the trial court lacked subject matter jurisdiction to grant the injunction because the Ordinance is a penal ordinance and Appellee failed to meet its burden to demonstrate an irreparable injury to a vested property right. Civil courts lack jurisdiction to enjoin the enforcement of a penal ordinance unless the movant establishes that 1) the ordinance is unconstitutional or otherwise void, and 2) enforcement of the ordinance will result in an irreparable injury to vested property rights. *Tex. Education Agency v. Leeper*, 893 S.W.2d 432, 441 (Tex. 1994); *Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex. 1969); *Azadpour v. City of Grapevine*, No. 02-13-00323-CV, 2014 WL 2566024, at *2 (Tex. App—Fort Worth June 5, 2014, pet. denied) (mem. op.); *City of Houston v. MEF Enters., Inc.*, 730 S.W.2d 62, 63 (Tex. App.—Houston [14th Dist.] 1987, no writ.). The first prong of the test regarding validity has not been raised in this appeal.

Although an appellate court generally reviews a trial court's decision to grant a temporary injunction using an abuse of discretion standard, *City of Corpus Christi v.*

6

*Maldonado*, 398 S.W. 3d 266, 269 (Tex. App.—Corpus Christi 2011, no pet.), whether a trial court has subject-matter jurisdiction to grant a temporary injunction presents a question of law and is reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–28 (Tex. 2004); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *City of Grapevine v. CBS Outdoor, Inc.*, No. 02-12-00040-CV, 2013 WL 5302713, at *2 (Tex. App—Fort Worth Sept. 19, 2013, no pet.) (mem. op. on reh'g). When reviewing a question of subject-matter jurisdiction, the appellate court may examine the pleadings and consider evidence which is relevant to the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *City of Grapevine*, 2013 WL 5302713 at *2; *Ryan v. Rosenthal*, 314 S.W.3d 136, 141 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Morrow v. Truckload Fireworks, Inc.*, 230 S.W.3d 232, 236 (Tex. App.—Eastland 2007, pet. dism'd as moot). In considering the evidence, the appellate court takes as true all of the evidence favorable to the non-movant and indulges every reasonable inference and resolves any doubts in the non-movant's favor. *City of Grapevine*, 2013 WL 5302713 at *2 (citing *Miranda*, 133 S.W.3d at 226; *IT-Davy*, 74 S.W.3d at 855). Whether pleadings allege facts that affirmatively demonstrate a trial court's jurisdiction is a question of law which is reviewed de novo. *Ryan*, 314 S.W.3d at 141 (citing *Miranda*, 131 S.W.3d at 226). Finally, a prerequisite to the issuance of a temporary injunction is that an irreparable injury must be established by competent evidence introduced at the hearing.

7

*Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686–87 (Tex. 1968);

*Goldthorn v. Goldthorn*, 242 S.W.3d 797, 798 (Tex. App.—San Antonio 2007, no pet.).

## III.  THE TRIAL COURT LACKED SUBJECT-MATTER JURISDICTION TO GRANT THE TEMPORARY INJUNCTION

### A.  Ordinance is Penal in Nature

"The basic test as to whether a law is penal is whether the wrong sought to be redressed is a wrong to the public or a wrong to an individual." *Consumer Serv. All. of Tex., Inc. v. City of Dallas*, 433 S.W.3d 796, 803 (Tex. App.—Dallas 2014, no pet.) (citing *Huntington v. Attrill*, 146 U.S. 657, 668, 13 S. Ct. 224, 228 (1892)).  A public wrong involves the "violation of public rights and duties, which affect the whole community, considered as a community, and are considered crimes; whereas individual wrongs are infringements of private or civil rights belonging to individuals, considered as individuals, and constitute civil injuries." *Id.* (citing *Huntington*, 146 U.S. at 668–69, 13 S. Ct. at 228; *Trop v. Dulles*, 356 U.S. 86, 96, 78 S. Ct. 590, 595 (1958)). When an ordinance's primary purpose is to protect the welfare of a municipality's citizens, it "is clearly addressing a wrong to the public at large" and is a penal ordinance.  *Wild Rose Rescue Ranch v. City of Whitehouse*, 373 S.W.3d 211, 216 (Tex. App.—Tyler 2012, no pet.).  Furthermore, an ordinance that makes a violation punishable by a fine or which makes conduct "unlawful" is penal in its nature. *See State ex rel. Flowers v. Woodruff*, 200 S.W.2d 178, 181 (Tex. Crim. App. 1947) ("There can be no question but that the ordinance under consideration is penal in its nature, as

8

it provides a fine up to $100 for each violation of any part of the ordinance.");
*Consumer Serv.*, 433 S.W.3d at 803 (holding that ordinance that was punishable by fine and made violation an "offense" was a penal ordinance); *Wild Rose Rescue Ranch*, 373 S.W.3d at 216 (holding that ordinance that in part authorizes citations and fines was "primarily penal in nature"); *Destructors, Inc. v. City of Forest Hill*, No. 2-08-440-CV, 2010 WL 1946875, at *3 (Tex. App.—Fort Worth 2010, no pet.) (mem. op.) (holding that ordinance that used term "unlawful" was a penal ordinance).

The ordinance in question is penal in nature. It addresses a public wrong and promotes the welfare of the Town's citizens. As set forth in the ordinance, "natural gas drilling and production operations involve or otherwise impact the Town's environment, infrastructure[,] and related public health, welfare[,] and safety matters." Flower Mound, Tex., Ordinance 29-11. This is further buttressed by the express purpose of the Article containing the Ordinance, which is "to protect the health, safety and general welfare of the public; minimize the potential impact to property and mineral rights owners[;] protect the quality of the environment[;] and encourage the orderly production of available mineral, oil, and gas resources." Flower Mound, Tex., Code of Ordinances § 34-416. In fact, Appellee was issued a citation for violating the ordinance. Violations of the Ordinance are considered unlawful. *Id.* § 34-433(a). Violations are punishable by a fine. *Id.* § 34-433(b). Because the Ordinance is penal in nature, Appellee had the burden to demonstrate irreparable injury to a vested property right. *See Consumer Serv.*, 433 S.W.3d at 804.

**B.    No Irreparable Injury to Vested Property Right**

For purposes of this opinion, it will be assumed, without deciding, that Appellee had a vested property right, i.e., a mineral interest in the gas in the ground under the leases in question.  In this case, the granting of the temporary injunction must nevertheless be reversed because there was no competent evidence of irreparable injury.  *See Lifeguard Benefit Servs., Inc. v. Direct Med. Network Sols., Inc.*, 308 S.W.3d 102, 111 (Tex. App.—Fort Worth 2010, no pet.) (citing *N. Cypress Med. Ctr. Operating Co., Ltd. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.)); *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925 (Tex. App.—Dallas 2006, no pet.).  The Texas Supreme Court has held that "[a]n injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard."  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ)).  Contrary to Appellee's argument, as discussed more below, allegations of injury to an interest in real property do not dispose of the necessity of proving irreparable injury.  *See City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 770 (Tex. App.—Fort Worth 1994, writ dism'd w.o.j.) (court may consider lack of harm in deciding propriety of issuance of temporary injunction); *see also Amend v. Watson*, 333 S.W.3d 625, 629 (Tex. App.—Dallas 2009, no pet.); *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd); *cf. Savering v. City of Mansfield*, 505 S.W.3d 33,

10

49–50 (Tex. App.—Fort Worth 2016, pet. denied) (holding injunction appropriate remedy when pleading of trespass was supported by evidence of trespass and injury resulting therefrom). Moreover, this Court has previously established that "[a]n injunction is not proper when the claimed injury is merely speculative." *Lifeguard Benefit Servs.*, 308 S.W.3d at 111 (citing *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 227 (Tex. App.—Fort Worth 2009, pet. denied)).

Appellee asserts that it will suffer irreparable injury because, as Appellants concede, it will suffer "hefty" fines under the Ordinance. However, neither Appellants' brief nor the record support this assertion; neither reveal that Appellee will suffer "hefty" fines. While the Ordinance imposes a fine for violations, the record does not show that the imposition of the fines would be so great so as to destroy Appellee's business before it could test the Ordinance's constitutionality in a criminal proceeding. *See Wild Rose Rescue Ranch*, 373 S.W.3d at 217; *State v. Logue*, 376 S.W.2d 567, 570–72 (Tex. 1964); *cf. City of Laredo v. Laredo Merchants Ass'n*, 550 S.W.3d 586, 592 n.28 (Tex. 2018). Further, the record does not show that the Ordinance effectively prevents Appellee from challenging its validity in a criminal prosecution because it imposes penalties on Appellee's customers, who would be reluctant to expose themselves to criminal prosecution in order the challenge the law. *See City of Austin v. Austin City Cemetery Ass'n*, 28 S.W. 528, 529 (Tex. 1894).

Appellee has further asserted two types of alleged injury to show irreparable harm: (1) increased costs of operation because of the impact of changes in operations

11

necessary to comply with the Ordinance, and (2) economic losses which might occur if the wells have to be shut down because of the wells becoming unprofitable to operate in the future. With regard to the first category, Appellee calculated its higher operating costs and, at the temporary injunction hearing, Appellee's witness testified about the difference in Appellee's operating expenses with and without the enforcement of the Ordinance. Appellee also produced a chart demonstrating an alleged difference in operating expenses without the enforcement of the Ordinance (water disposal rate of $1.65/barrel (bbl)) and with enforcement of the Ordinance (water disposal rate of $2.00/bbl). However, while these alleged increased operating costs may show harm to Appellee's profits, they do not show irreparable harm to Appellee's mineral interests, and thus do not show irreparable harm to Appellee's vested property rights. *See Morrow*, 230 S.W.3d at 238–40.

Appellee further contended at the trial court that the Ordinance restriction on removal of waste water to night hours would drive the cost of production so high that it would be economically unable to continue gas production and would have to shut down the wells. This, in essence, is a claim for a regulatory taking which deprives Appellee of the use of its mineral estate. Appellee's measure of damages for such an alleged taking would be the loss of value of the mineral estate in place. *See Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 364 (Tex. App.—Texarkana 2002, pet. denied); *Lomax v. Henderson*, 559 S.W.2d 466, 467 (Tex. App.—Waco 1977, writ ref'd n.r.e.); *see also Edwards Aquifer Auth. v. Bragg*, 421 S.W.3d 118, 150 (Tex. App.—San Antonio

12

2013, pet. denied) (discussing cases valuing sub-surface estates). However, assuming a resulting shutdown of its wells would constitute irreparable harm despite the recoverability of damages for regulatory takings, *see Butnaru*, 84 S.W.3d at 204, Appellee offered no evidence of the value of the mineral interest in place or any loss of value. Thus, there is no evidence to support Appellee's argument of irreparable harm.

With regard to Appellee's claims of future economic losses from a potential shutdown of the wells resulting from the Ordinance, these damages are speculative and will not support injunctive relief. *See id.* The lynchpin of the argument that the wells would have to shut down due to increased operational expenses is lack of profitability. The evidence presented reflected that the wells in question had a positive net cash flow in 2018. Appellee did not expect the wells to become "uneconomic" until 2019. Appellee's witness speculated that both the gas production from the wells and the price of natural gas would decrease in 2019, resulting in a lost net cash flow of -$369.6 million. However, no explanation was given regarding why production would be decreasing or why the cost of natural gas would be decreasing. Nor did the witness explain why the wells might otherwise be uneconomic other than the effects of increased hauling costs arising from the requirements of the Ordinance. This testimony is nothing more than ipse dixit expert testimony and constitutes mere speculation. *See MJS Assocs., L.L.C. v. Master*, 501 S.W.3d 751, 759–61 Tex. App.— Tyler 2016, pet. denied); *Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*,

13

131 S.W.3d 203, 208–09 (Tex. App.—Fort Worth 2004, pet. denied); *Lane v. Phares*, 544 S.W.3d 881, 897 (Tex. App.—Fort Worth 2018, no pet.). Such conclusory, ipse dixit testimony amounts to "no evidence." *Merrill Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 712–14 (Tex. 1997).

Appellee did not present any evidence that its alleged losses could not be "measured by any certain pecuniary standard." Instead, Appellee merely provided a conclusory statement without supporting facts that losses caused by possibly shutting down wells would be very "difficult" to calculate at present. However, as noted above, it is well settled that losses from minerals being shut in due to changes in accessibility can be calculated according to established valuation methods.

Further, Appellee claimed that interruption of its business operations would lead to damages. The record is devoid of evidence demonstrating loss of goodwill or other intangible losses potentially associated with a disruption of business, and this argument is nothing but speculation.

## C. No Evidence of Irreparable Harm Under Texas Civil Practice & Remedies Code Section 65.011(5).

Appellee argues that "because real property is involved it is not required to prove an [in]adequate remedy at law as a precondition of obtaining an injunction pursuant to section 65.0[1]1(5) of the Texas Civil Practice and Remedies Code."[2]

---

[2]Appellee cited to section 65.001(5), but we assume it intended to cite to section 65.011(5). There is no subsection (5) of section 65.001. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 65.001, 65.011.

Section 65.011 provides that "[a] writ of injunction may be granted if: . . . irreparable injury to real or personal property is threatened, irrespective of any remedy at law." Tex. Civ. Prac. & Rem. Code Ann. § 65.011(5).

The Texas Supreme Court has interpreted Section 65.011(5) to require both irreparable injury and an inadequate legal remedy. *See Storey v. Cent. Hide & Rendering Co.*, 226 S.W.2d 615, 619 (Tex. 1950) (analyzing Section 65.011(5)'s predecessor statute and holding that in enacting it, the legislature had not abolished the requirement to prove irreparable harm and inadequate remedy); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 234 n.2 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001); *Storey*, 226 S.W.2d at 619); *see also Graff v. Berry*, No. 06-06-00065-CV, 2006 WL 2805555, at *2 (Tex. App.—Texarkana Sept. 11, 2006, no pet.) (mem. op.).[3] However, because Appellee has not shown irreparable harm and has therefore not shown its entitlement to injunctive relief, the availability of an adequate remedy at law is moot. *See* Tex. R. App. P. 47.1; *Butnaru*, 84 S.W.3d at 204 (stating that plaintiff must plead and prove irreparable injury to be entitled to temporary injunction); *Sisk v. Richards*, 130 S.W.2d 1076, 1077 (Tex. App.—Galveston 1939, no writ) (stating that the plaintiff's "having

---

[3]Some courts of appeals have held that this section does away with the no-adequate-remedy requirement. *See DSTJ, L.L.P. v. M. & M. Res., Inc.*, No. 09-06-073-CV, 2006 WL 1360509, at *2 (Tex. App.—Beaumont May 18, 2006, no pet.) (mem. op.) (not mentioning or distinguishing *Storey*); *Simon Prop. Group (Tex.) L.P. v. May Dep't Stores Co.*, 943 S.W.2d 64, 70 (Tex. App.—Corpus Christi-Edinburg 1997, no writ) (same). This court is bound by the Texas Supreme Court's precedent.

completely failed on the facts to show that he was entitled to the injunctive-relief, no question of whether there existed an adequate remedy at law was really left as a material one").

**D.     The Trial Court's Temporary Injunction Cannot be Sustained Under Tex. Loc. Gov't Code Section 211.**

Appellee contends that Texas Local Government Code section 211.006(d) provides an independent statutory right to an injunction and does not require proof of a vested property right for success.  However, the text of section 211.006(d) makes no reference to injunctions.  *See* Tex. Loc. Gov't Code Ann. § 211.006(d).  Further, the existence of a vested property right has been assumed for purposes of this opinion so that matter is moot.

Appellee next contends that section 211.010(c) of that code imposes a stay on the enforcement of the Ordinance in the trial court due to the appeal from the decision of the town official to the BOA.  Again, the plain language of that section demonstrates that this is not the intended application.  While a statutory heading does not limit or expand a statute's meaning, "the heading can inform the inquiry into the Legislature's intent."  *TIC Energy & Chemical, Inc. v. Martin*, 498 S.W.3d 68, 75 (Tex. 2016); *see also In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 307–08 (Tex. 2010). Section 211.010 is entitled "APPEAL TO BOARD."  Tex. Loc. Gov't Code Ann. § 211.010.  Subsections (a) and (b) set up the procedures for an appeal of an official's decision to the BOA.  *Id.* § 211.010(a), (b).  Subsection (c) then provides that "[a]n

16

appeal stays all proceedings in furtherance of the Action that is appealed unless" the official from whom the appeal is taken certifies certain facts to the BOA. *Id.* § 211.010(c). The textual context clearly provides that the stay is in regard to the enforcement of the matter which is under appeal to *the BOA*, not an action in the trial court. *Id.* Words in a statute shall be given their ordinary meaning. Tex. Gov't Code Ann. § 312.002; *In re Ford Motor Co.*, 442 S.W.3d 265, 271 (Tex. 2014). Therefore, this provision does not apply to the Temporary Injunction issued by the trial court.

Finally, Appellee also invokes section 211.011(c). *See* Tex. Loc. Gov't Code Ann. § 211.011. Section 211.011 is entitled "JUDICIAL REVIEW OF BOARD DECISION." *Id.* Subsections (a) and (b) set out who may seek judicial review and the procedure for invoking judicial review by writ of certiorari. *Id.* § 211.011(a), (b). The only reference in subsection (c) to injunctive type relief is as follows: "Granting of the writ does not stay the proceedings on the decision under appeal, but on application and after notice to the board the court may grant a restraining order if due cause is shown." *Id.* § 211.011(c). This provision does not apply to the Temporary Injunction in question. First, the courts recognize a distinction between restraining orders and temporary injunctions. The Texas Supreme Court, in *In re Texas Natural Resources Conservation Commission*, 85 S.W.3d 201 (Tex. 2002), recognized the crucial distinction between the two: temporary injunctions are subject to interlocutory appeal whereas restraining orders are not appealable. *Id.* at 205. As stated by the Court:

17

The initial inquiry is whether the district court's order is an appealable order. A temporary restraining order is generally not appealable." A temporary injunction, however, is an appealable interlocutory order. The fact that the order is denominated as a temporary restraining order does not control whether the order is appealable. Whether an order is a non-appealable temporary restraining order or an appealable temporary injunction depends on the order's characteristics and function, not its title. In *Del Valle* [*Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992)], [the Court] explained the roles the different orders serve:

> A temporary restraining order is one entered as part of a motion for a temporary injunction, by which a party is restrained pending the hearing of the motion. A temporary injunction is one which operates until dissolved by an interlocutory order or until the final hearing.

*Id.* (internal citations omitted).

The legislature chose to grant statutory authority for a restraining order. Tex. Loc. Gov't Code Ann. § 211.011(c). It did not grant statutory authority for temporary injunctions. *Id.* The legislature is presumed to be aware of relevant case law when it enacts or modifies statutes and a statute is presumed to have been enacted by the legislature with knowledge of existing law. *See Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001) (citing *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1943)). Finally, "[l]anguage in a statute is presumed to have been selected and used with care, and every word or phrase in a statute is presumed to have been intentionally used with a meaning and a purpose." *In re Allen,* 366 S.W.3d 696, 706 (Tex. 2012). Therefore, this Court will presume that the Legislature intended the Local Government Code to mean just what it says, i.e., that a trial court may issue a

restraining order, not injunction, under this provision. *See* Tex. Loc. Gov't Code Ann. § 211.011(c).

In this case, the trial court issued a "Temporary Restraining Order" which expired by its own terms. It specifically met the criteria for a restraining order set out by the Supreme Court above. But the trial court then held a hearing on an application for a "Temporary Injunction," which the trial granted, effective until a trial on the merits. Again, the language of the "Temporary Injunction" clearly contained the language of an injunction as set out by the Texas Supreme Court above and was not authorized by Section 211.011(c). *See In re Tex. Nat. Res.s Conservation Comm'n*, 85 S.W.3d at 205.[4]

We sustain Appellants' sole issue.

## IV. CONCLUSION

The Temporary Injunction issued by the trial court is dissolved, and the case is remanded to the trial court for disposition on the merits.

---

[4]Contrary to the argument in the Concurring and Dissenting Opinion, this interpretation should not lead to absurd results which could defeat the purpose of a temporary restraining order. Sections 211.010(c) and 211.011(c) specifically use the term "restraining order," not "injunction." However, just because a particular Local Government Code provision does not authorize an injunction, the trial court is not necessarily without jurisdiction to issue injunctive relief under other authority, if justified. *See City of El Paso v. Caples Land Co., LLC*, 408 S.W.3d 26, 34–36 (Tex. App.—El Paso 2013, pet. denied) (absence of authority to issue restraining order under Local Government Code section 214.0012 did not preclude authority to issue injunctive relief under Tex. Civ. Prac. & Rem. Code Ann. section 65.011(2)).

19

/s/ Mike Wallach

Mike Wallach
Judge

Delivered:  August 22, 2019